## DELOS MILLS and others *vs.* PATRICK S. STEWART.

The right of a creditor of a corporation to sue a stockholder, for a debt of the corporation, after the return of an execution issued against the corporation unsatisfied, is not independent of, but subordinate to, the right of the directors to compromise the debt, or to forfeit the stock of the stockholder.

And after the directors have, in good faith and in conformity with the charter of the corporation, forfeited the stock of a stockholder, the latter ceases to be liable to the creditors of the company, and no action can be maintained against him by such creditors, for the recovery of their debt.

Yet if the directors have *fraudulently* forfeited the stock, and thereby released the stockholder, from liability to the creditors of the corporation, the forfeiture will be void, and the stockholder liable, notwithstanding.

The power to forfeit the stock in the manner prescribed is clearly given, and, like any other power conferred on the directors, is to be exercised, or not, at the discretion of those to whom it is given. The only limitations on the powers are, 1st. That it be done in the manner prescribed; and, 2d. In good faith.

By the very terms of the act, the person sued, must be, when sued, a holder of unpaid stock, and such holding and liability for debts must coexist at the same time; and the latter cannot arise except from and out of the former.

After forfeiture, there cannot be either a right to stock or liability as a stockholder.

APPEAL, by the defendant, from a judgment entered upon the report of a referee. The action was brought by the plaintiffs as assignees of a judgment creditor of the Lake Ontario and Hudson River Railroad Company, against the defendant as a stockholder of the company, to recover the amount of said debt of him, to the extent of the unpaid stock held by him.

The defense set up in the answer was, that the company did, on or about the 9th day of December, 1857, in pursuance of the power vested in it by the statute, forfeit, and declare forfeited, the defendant's stock, and all payments thereon made, for the use of the company, and the defendant thereby ceased to be a stockholder in said company, and every obligation on his part to pay any further or additional sum by reason of his subscription to the

stock, was thereby released and forever discharged. And the defendant further alleged that the plaintiffs' cause of action was on a judgment recovered against the company after the time when he ceased to be a member thereof, or to be liable for any of its debts.

The referee found and reported, among other things, the following facts : The due incorporation of the railroad company. That in and by its articles of association the capital stock of the company was fixed at $2,500,000, to be divided into 25,000 shares of stock. The defendant became a subscriber for sixty shares of said stock, amounting to $6000, and paid thereon ten per cent, amounting to $600, leaving unpaid thereon the sum of $5400, which still remains unpaid. That on the 26th day of November, 1855, Paul S. Maxon duly assigned to Delos Mills, Samuel Mills, and William W. Hill, all his property, real and personal, in trust for the benefit of his creditors, which trust the said Delos, Samuel and William accepted and undertook to execute. That said William died in June 1858, leaving the said Delos and Samuel surviving him, who have since continued to act as such assignees and trustees. That on the 15th day of January, 1857, the railroad company was indebted to George H. Pierce, Elisha H. Jewett, Elisha Gillmore, and William Flynn, doing business under the partnership name of "Pierce, Jewett & Co.,". in the sum of $1000, for work, labor, and services, which they had performed for said railroad company in the construction of a portion of the railroad said company was authorized to construct under a contract made with said railroad company by Pierce, Jewett & Co. In consideration of said indebtedness said Pierce, Jewett & Co., on the said 15th day of January, 1857, drew and signed an order or draft on Charles A. Macy, the treasurer of the Sacket's Harbor and Saratoga Railroad Company for $1000, payable to the order of themselves twenty-four months after the date thereof, which order was duly indorsed by said

Pierce, Jewett & Co., and transferred and delivered to the plaintiffs as assignees as aforesaid, and was also duly accepted by said Macy, who was authorized and empowered by said railroad company to accept the same; that said draft was not paid when it became due and payable, and was duly protested for non-payment. That in the month of February 1859, the plaintiffs commenced an action on the said order or draft, in the Supreme Court, against the said railroad company, and obtained a judgment thereon against said company, on the 9th of May, 1859, for the sum of $1021.58 damages, and $16 costs and disbursements, making a total of $1037.58. An execution was issued on said judgment on the 17th of May, 1859, directed to the sheriff of Lewis county, and was returned unsatisfied.

That this suit was commenced on the 30th day of November, 1859. That on the 20th of August, 1857, the directors of the said railroad company passed a resolution directing the treasurer of the company to make a call of one dollar per share upon the stock of the company, upon which ten per cent only had been paid. On the 17th of September, 1857, said directors passed a resolution directing the treasurer to send a notice to each stockholder, requiring the payment of one dollar per share on his stock sixty days after such notice, upon pain of forfeiture in case of non-payment. That in pursuance of the last mentioned resolution, the treasurer of the company, on the 26th of September, 1857, sent to the defendant, per mail, a notice in accordance therewith, requiring him to pay one per cent on each share of his stock, on or before the 25th day of November then next, and that in case of non-payment, the directors were authorized to declare his stock forfeited. Said notice was received by the defendant in due course of mail. The defendant did not make the payment thus required. That on the 9th day of December, 1857, the directors of the said railroad company

passed a resolution declaring the stock of forty-five stock-holders forfeited for the non-payment of an installment of one dollar per share, duly called, and of which the parties respectively had had due notice, as was in said resolution alleged. The defendant's name was in the list of persons whose stock was declared forfeited by this resolution. It appeared from said resolution, that upwards of 29,000 shares of stock were thus declared forfeited.

From these facts the referee found, as matter of law, that the plaintiffs were entitled to recover of the defendant the amount of the said order or draft dated January 15, 1857, and the interest thereon accruing since the same became due and payable. And he decided and reported that the plaintiffs recover against the defendant the sum of $1000, and interest thereon, making a total of $1162.14, for which sum, and costs of suit, the plaintiffs were declared entitled to judgment against the defendant.

*D. Pratt*, for the appellant.

I. At the time of the commencement of this action, the defendant was not a stockholder in the company, nor was he in any manner indebted or liable to the company. 1. The stock for which he originally subscribed had been forfeited under the seventh section of the railroad act. (2 *R. S.* 670, *5th ed.*) (*a.*) All the formalities of the statute were observed on the part of the company to make the forfeiture legal and binding. (*b.*) The referee finds that the stock of the defendant was legally forfeited, and his decision was based upon that assumption. 2. By the forfeiture, the defendant ceased to be a stockholder, and all liability to the company upon his subscription was discharged. (2 *N. Y.* 330.)

II. The purpose of the first clause of the tenth section of the general railroad act was not to create a statutory liability in favor of creditors, like the second clause of the same section, or like the personal liability clause in the

Mills *v.* Stewart.

act for the incorporation of manufacturing and banking companies, but rather to give a more direct remedy to enforce an existing liability. 1. Independent of any legislation, a judgment creditor, after the return of an execution *nulla bona*, could, by the aid of a court of equity, compel the application of unpaid subscriptions to the satisfaction of his debt. (9 *Paige*, 152. 15 *How. U. S.* 304. 3 *Comst.* 415. 10 *Paige*, 290.) (*a.*) This was based upon the principle that the capital stock of a corporation is a trust fund for the security of its creditors. (*Cases cited supra, also* 15 *Mass.* 505. 16 *id.* 92. 3 *Mason*, 308.) (*b.*) Unpaid subscriptions constitute a portion of the capital stock of a corporation. 2. Hence provision is made by our statute for enforcing this liability in regard to all corporations, in the same manner substantially as the judgment creditor would be entitled to enforce in equity, without the aid of the statute. (2 *R. S.* 465, *5th ed.* 3 *id.* 766, § 58, *5th ed.*) 3. So there is a statutory provision in England, by which, after the return of an execution *nulla bona* against a railroad corporation, the court may order an execution to issue against a delinquent stockholder, to collect out of him, for the satisfaction of the judgment, the amount of his unpaid subscription. (8 *and* 9 *Victoria*, *ch.* 16, §§ 36, 37.) 4. At common law it seems that the company could also be compelled by mandamus, at the suit of a judgment creditor, to collect unpaid subscriptions sufficient to satisfy the debts of the company. (12 *B. R.* 88. 5 *Watts*, 152.) 5. This equitable liability having been recognized and acted upon, both by the courts and the legislature, long anterior to the act of 1850, it is clear that the purpose of the legislature was to provide a direct and expeditious method of enforcing such liability by an action at law.

III. The liability of a stockholder to a creditor of the company upon his unpaid subscription is based, therefore,

upon his liability to such company, and a satisfaction or discharge of such liability to the company, before the commencement of an action against him by the creditor, must necessarily discharge him from the claim of such creditor. 1. It is clear that payment to the company would discharge him, as well from all claims for debts of the company contracted before such payment, as those contracted afterwards. 2. The discharge of the debt due to the company, by a forfeiture of the stock, is equivalent to payment. The presumption is, that the stock is worth par. (*Small* v. *Herkimer Manufacturing Co.*, 2 *N. Y.* 330.) 3. At all events, if we are right in our suggestions as to the purpose of the act, the right of the plaintiff to recover must depend upon the existence, at the time of the commencement of his action, of an unpaid valid subscription due to the company. 4. If it be not so, then the company may forfeit a subscriber's stock for non-payment of calls, and then procure some creditor to bring suit and compel payment, and thus evade the decision in *Small* v. *Herkimer Manufacturing Co.*, (*supra*.) 5. Again, if the subscriber can thus be compelled to pay, after forfeiture, he ought, upon payment, to be reinvested with his stock, but it will not be claimed that there is any method by which that can be done. (*a.*) The corporation may be presumed to have elected to forfeit the stock instead of collecting the unpaid subscription, because the former was best for the interest of the company. (*b.*) If a creditor can collect such unpaid subscription after forfeiture, and give the stockholder the right to be reinvested with stock, it gives the creditors the power to overrule the directors in the matter. (*c.*) The right to collect, without giving the defendant the right to the stock, would work manifest injustice. (*d.*) That the defendant would have no right to the stock again, was assumed in *Small* v. *Herkimer Manufacturing Co.*, and is manifestly well settled law. (13 *Vesey*, 428.

1 *Younge & Collyer*, 98. 12 *Wend.* 61. 2 *Story's Eq.* § 1031.) 6. Moreover, suppose a creditor had collected the whole of the unpaid subscription before proceedings taken for forfeiture; in that case, the right of the company to forfeit the stock would clearly be gone. We submit that the converse of the proposition is equally correct. 7. That the right of the creditor to proceed against a subscriber to the capital stock is lost by a forfeiture of the stock on the part of the company, is in accordance with all the analogies of the law. (*a.*) It may be likened to the liability of an heir or devisee for the debts of the ancestor. In such case, if his estate is defeated—not by his own act, but by the act of the law—he may plead the fact in bar to an action against him as heir, as where the land has been sold by order of the surrogate to pay debts. (26 *John.* 414.) (*b.*) So, an entry for condition broken annuls all liens and covenants attached to the estate. 8. Even in the case of a direct liability created by statute, the statute is not to be construed literally; but it is subject to an equitable construction for the purpose of doing equity. (17 *N. Y.* 458.)

IV. The exemption from liability claimed on behalf of the defendant in this case, is based upon the assumption that the forfeiture of his stock was effected in good faith on the part of the company, and without any collusion with the defendant. We concede, if such forfeiture was the result of collusion, and for the purpose of avoiding responsibility to the creditors of the company, he would be liable.

V. No claim of that kind can be raised upon this appeal. 1. No collusion has been found by the referee. 2. In his opinion, he puts his decision expressly upon the ground that the defendant became liable when the debt was contracted, and could only discharge such liability by direct payment to the company.

*E. A. Brown,* for the respondents.

I. A subscriber to original articles of association becomes a stockholder, and liable to the corporation to the amount of his subscription. (*Pierce on Am. R. R. Law,* 56. *The Troy and Boston R. R. Co.* v. *Tibbits,* 18 *Barb.* 297. *Same* v. *Warren, Id.* 310. *Spear* v. *Crawford* 14 *Wend.* 20. *Og. R. & C. R. R. Co.* v. *Frost,* 21 *Barb.* 541. 1 *Shelford on Railways,* 116, " *Shareholder." Id.* 121. *English Statutory definition of the word. Lake Ontario, &c., R. R. Co.* v. *Mason,* 16 *N. Y.* 451.) No question was raised on the trial as to the sufficiency of the proof of the organization of the company, or of the plaintiff's being a stockholder.

II. Being thus liable on his subscription to the corporation itself, the defendant is equally liable to creditors of the corporation in a sum equal to the amount unpaid on his subscription. (*Laws of* 1850, *ch.* 212, § 10. *Amended, Laws of* 1854, *ch.* 614, § 16. *Pierce on Am. R. R. Law,* 510, *and note* 4, *and cases cited in the note.*) Stockholder liable for debts contracted while he was a stockholder. (*Moss* v. *Oakley, Bronson, J.,* 2 *Hill,* 265. *McCullough* v. *Moss,* 5 *Denio,* 567. *Allen* v. *Sewall,* 2 *Wend.* 327. *S. C.,* 6 *id.* 335. 19 *N. Y.* 119. 5 *Bingham,* 521. 7 *id.* 110. 18 *Barb.* 152. 9 *Barn. & Cres.* 356. *Corning & Horner* v. *McCullough,* 1 *N. Y.* 47, 56 *to* 58. 5 *Hill,* 131. 7 *Barb.* 279. *Redfield on Railroads,* 603, 608, *and note* 9. *Woodruff & Beech Iron Works* v. *Chittenden,* 4 *Bosw.* 406.)

III. A change of the charter of the company, (under the act of April 6, 1857,) forms, in this case, no defense. It would furnish no defense to the defendant against an action by the corporation to recover the amount unpaid on his subscription; and certainly such alteration would be no defense against a creditor who became such before the alteration was made, and when the stockholder's liability became fixed for the indebtedness of the company, i. e., the debt being contracted while he held stock, a por-

Mills *v.* Stewart.

tion of which was unpaid. (*Pierce on Am. R. R. Law*, '78 to 100, *and cases cited in notes, as follows : p.* 78, *note* 2 ; *p.* 79, *note* 1 ; *pp.* 87, 90, 95 *and* 96, *note* 1.)

IV. The main, if not the only defense relied on by the defendant in this case, is the alleged forfeiture of his stock, on the 9th of December, 1857, long after the existence of this debt against the corporation. (*General Railroad Law of* 1850, *p.* 215, § 7.) Such a defense is unavailing to the defendant, for the following reasons : 1st. The defendant was a stockholder at the time the debt was contracted by the corporation, and held stock to the amount of $6000, $5400 of which remained, and still remains, unpaid to the company. (*See cases cited under* 2d *point, and* 19 *John.* 456, *note a.*) 2d. His stock was never legally forfeited by the company. (*a.*) The resolution of August 20, 1857, was inoperative for the purpose of laying a foundation for the forfeiture of stock, because it contains no provision of that kind, nor does it name the defendant as one against whom it was intended to operate. (*b.*) The resolution of September 17, 1857, is illegal and inoperative for the purpose aforesaid, because it does not require payment by the defendant of the installment mentioned in it, or that his stock would be forfeited to the use of the company. It is not in accordance with section 7 of the railroad law. (*c.*) The notice, dated September 17, 1857, was illegal and inoperative for the purpose aforesaid, because it was not preceded by proper action on the part of the corporation to warrant a notice of forfeiture ; and the notice did not state that the stock would be forfeited, with all previous payments thereon, to the use of the company in case of failure to pay the installment of one per cent. (*d.*) The resolution of December 9 does not purport to forfeit the defendant's stock, and all previous payments thereon, for the use of the company, nor is there any evidence in the case to show a compliance on the part of the corporation, with the provisions of section 7 of the railroad law. (*e.*) On

the contrary, the last named resolution contains provisions which might effectually prevent the corporation from becoming possessed of the defendant's shares of stock. (*f.*) The referee has not found, as a fact, that the defendant's stock was forfeited. (*g.*) The proceedings to forfeit stock were collusive and fraudulent, and the referee might well have so found, as matter of fact.

V. Whether the pretended forfeiture was or was not valid and effectual to deprive the defendant of his stock, and to discharge him from further liability to the corporation for the amount unpaid on his subscription, the rights of creditors, whose demands existed before forfeiture, could not be affected thereby. (*Cases cited under* 2d *point.*)

*By the Court*, MULLIN, J. The defendant is liable to the plaintiffs in this action, provided he was a stockholder in the Sacket's Harbor and Saratoga Railroad Company, owning unpaid stock therein when this action was brought. That he subscribed for stock in said company, and that he never paid for it, are undisputed facts in the case. In 1857, after the debt, for the recovery of which this action is brought, was contracted, the railroad company forfeited the defendant's stock and all payments made thereon, to the use of the company, in conformity to the provisions of section 7 of the general railroad act of 1850. (*Laws of* 1850, *ch.* 140.) That section provides that the directors may require the subscribers to the capital stock to pay the amount by them subscribed, in such manner and in such installments as they may deem proper. If any stockholder shall neglect to pay any installment, as required by a resolution of the board, it shall be authorized to forfeit his stock and all previous payments thereon, after notice in the manner required by said section. The plaintiffs' counsel makes some criticism upon the proceedings of the directors, but I believe they are in compliance with the section under consideration. I do not understand the

plaintiffs' counsel, or the referee, to deny but that the defendant is released from liability to the plaintiffs, if the directors had the power to declare a forfeiture of the stock, and if such forfeiture, when made, binds the creditors of the company. But it is insisted that a forfeiture of stock binds the company only; but the creditors are, notwithstanding the forfeiture, at liberty to enforce the payment of their debts, so long as the stock is not actually paid up. The question is one of great importance, and not free from difficulty.

The 110th section of the general railroad act, which gives the right of action against the stockholders in favor of the creditors of the company, as amended in 1854, is in these words: "Each stockholder of any company formed under this act shall be individually liable to the creditors of such company to an amount equal to the amount unpaid on the stock held by him, for all the debts and liabilities of such company, until the whole amount of the capital stock so held by him shall have been paid to the company." The right thus given to the creditors is either wholly independent of the powers vested in the directors of the corporation over the stock and the holders thereof, or it is subject thereto.

Let us examine the question upon the first hypothesis— that the right of action is given to the creditors of the company, wholly independent of the powers of the directors of the corporation. In the first place, the lien, if I may so term it, which the statute gives, exists in favor of a single creditor for a sum however small, and is operative upon all the stockholders whose stock is unpaid, no matter how large the amount of such unpaid stock may be—a burden wholly unnecessary and uncalled for. 2d. While a creditor may be proceeding to collect his debt against a stockholder, the company is at liberty to proceed and forfeit his stock, and when the whole amount of unpaid stock is collected, the company may have forfeited the stock, and

Mills *v.* Stewart.

thus the stock be in fact paid for, and yet the stockholder not be able to obtain a single share. 3d. The directors having no power to interfere with the creditor's claim against the stockholders, they cannot compromise the debt, however beneficial such an arrangement might be to the corporation or its creditors. If the directors could obtain from any embarrassed stockholder a surrender of his stock, and twenty-five or fifty per cent of the amount due upon it, in consideration of a release from liability for the residue, it would be for the advantage of all concerned to accept it. But if there is no such power in the directors, the benefit must be lost, because the company owes a trifling debt, with ample means to pay it. If, on the other hand, this right of the creditor is subordinate to the power of the directors, conferred by the general railroad act, to forfeit stock, and generally to manage the financial affairs of the corporation in good faith, and to the promotion of the interests of the parties concerned, I can perceive no harm that can be done to the creditors or stockholders, while the means of the company are applied to the payment of its debts, and to carrying out the objects and purposes of its creation. The provisions of the statute under consideration can only have effect while the corporation is solvent; for when it becomes insolvent, the policy of our law has been to place all creditors upon an equality; to take away all preference of one creditor over another, and through a receiver to collect the amount due for stock, and apply the same, with the other assets of the corporation, in payment of its debts. (3 *R. S.* 761, §§ 41 *to* 104, *both inclusive, 5th ed.*) But if each creditor may enforce payment by action, regardless of the rights of others, the benefit of the provisions of the Revised Statutes are lost, and, as to this class of corporations, virtually repealed. It obviously was not the intention of the legislature to give to the creditors of a railroad corporation an absolute right of action

Mills v. Stewart.

against a stockholder, which overrides all the rights of the company, because it gives the right only so long as the stock remains unpaid to the company. Thus providing that a voluntary or compulsory payment to the company destroyed all right of action in favor of the creditors. If it had been intended to give an action to the creditor, wholly regardless of the rights of the corporation, the legislature would have prohibited payment to the company, and thereby secured the preference. But it was assumed that the directors would practice good faith, and that moneys paid to it would be applied, in the regular course of business, to pay the debts of the corporation. The right of the creditor to sue the stockholder was only given in order that the former might obtain his payment without being subjected to the delay resulting from either wilful or negligent omission of the directors to enforce the payment of the amount due for stock. For these and other reasons that might be suggested, I am of the opinion that the right of the creditor to sue the stockholder is not independent of, but subordinate to, the right of the directors of the corporation to compromise the debt or to forfeit the stock of the stockholder. The power to forfeit the stock in the manner prescribed is clearly given, and, like any other power conferred on the directors, is to be exercised or not at the discretion of those to whom it is given. The only limitations on the powers are, 1st. That it be done in the manner prescribed; and, 2d. In good faith.

In this case, the directors have, in the manner indicated, forfeited the defendant's stock, and in the absence of any evidence of bad faith, we are bound to assume it to have been done *bona fide.* What was the effect of this forfeiture upon the rights and liabilities of the defendant? That he lost the whole of his stock and the payments made thereon, the statute declares. Does he, nevertheless, still remain liable to creditors? The remedies are wholly inconsistent,

Mills *v.* Stewart.

and cannot exist together. The one proceeds upon the assumption that he retains his stock, the other that he has elected to abandon it. The one perfects, if successful, the title to his stock, the other sweeps it away altogether. When, therefore, the proceedings were complete, the forfeiture was perfect, and the defendant ceased to be a stockholder in the company. By the very terms of the act, the person sued must be, when sued, a holder of unpaid stock, and such holding and liability for debts must coexist at the same time; and the latter cannot arise except from and out of the former. After forfeiture, there cannot be either a right to stock or liability as a stockholder. The right to forfeit the stock is perfect; it is not in terms controlled in any respect. We cannot control it by construction or implication, by reason of the provision authorizing the creditors of the corporation to sue; because that right can have all the effect intended without interfering with the authority of the directors to forfeit. The one construction gives full effect to all the provisions of the statute; prevents unjust preferences; enables corporations to transact their business in a way to secure and promote the interest of stockholders; while the other defeats all these ends, and cripples and unnecessarily embarrasses the action of the directors, and the operations of the corporation. If the creditor is not bound by the act of forfeiture, then is the forfeiture a mere sham—a cheat. It cannot be possible that the legislature intended to compel the stockholder to pay, and at the same time permit the directors to forfeit his stock. Yet both results may be attained without the creditor or company being aware of the action of the other. The answer to the position that the right of the creditor is subordinate to the right of the company to forfeit, is, that if such right exists it enables the directors to release the stockholders to the prejudice of the creditors; that every solvent stockholder may be thus

released, leaving the debts wholly unpaid. If the directors should intentionally discharge the stockholders, leaving the debts unpaid, it would be a fraud on the creditors, and therefore void. If it was done in good faith, having due regard to the rights and interests of both creditors and stockholders, I can perceive no reason why it is not both legal and proper. If we are to forbid the exercise of corporate powers, because they may be abused, we may, for a like reason, prohibit the exercise of judicial and legislative power. While every security compatible with the rights of corporations should be given to their creditors, it is not wise or just to afford them protection by the sacrifice of the rights of stockholders or of the corporations themselves.

I have already alluded to the right of a corporation to compromise with its debtors, by accepting less than the whole debt and releasing the residue. This power is not specifically given to corporations, but it results, or is necessarily implied, from the right of the company to own and dispose of property, and to manage and control it. Debts are as much a resource with which to pay, as is the unpaid stock. Both are but debts, and were it not for the right given to creditors to sue the stockholders, no one would pretend that the company could not compromise a debt due to it for stock as effectually as one for cloth or lumber. Under the authority to compromise, the creditors or stockholders may be as effectually injured as by the forfeiture of stock. Yet it will not be pretended that a compromise made in good faith is not binding as well upon creditors as stockholders. (*Emmet* v. *Reed,* 4 *Seld.* 312. *Hyde, receiver,* v. *Lynde,* 4 *Comst.* 387.) In the latter case the defendant became insured in the Chenango Mutual Insurance Company, and gave, in accordance with the charter, his premium note for $83.20, and paid five per cent. Soon after, he sold the insured property, and by an agreement

Mills *v.* Stewart.

with the company his note was surrendered. The company afterwards became insolvent. The receiver, finding that the insured did not pay to the company his share of the losses which had accrued before the surrender of his policy, sued on the note, claiming to recover upon it its share of the losses and expenses. By the charter the company had the right to surrender the note on payment of its share of losses, &c., the policy being at an end by the sale of the property insured. It will be seen that by the settlement a share of the losses, &c., for which the defendant was unquestionably liable, was thrown upon other persons insured, or upon those whose property was destroyed, or to whom the company was indebted. Yet the Court of Appeals very properly held the settlement conclusive, being made in good faith. Bronson, J., says: "If the settlement, though a lawful act in itself, had been made for an illegal purpose, if for example the parties had known that there were valid claims against the company, to the payment of which the defendant ought to contribute, and yet the note was given up without consideration, for the purpose of defrauding either the creditors or the members of the corporation, the person defrauded would undoubtedly have a remedy, * * * at the most, the evidence only shows that the company made a bad bargain, and that is far enough from making out such a case as would enable creditors or any one else to set aside the transaction." These remarks of the learned judge apply with all their force to the case at bar. The corporation acting, as I presume, in good faith, have, in conformity with the charter, forfeited the stock of the defendant. He thereby ceased to be liable to the creditors of the company, and this action cannot be maintained. If the directors fraudulently forfeited the stock, and thereby released the defendant from liability to the plaintiffs, the forfeiture is void, and the defendant liable, notwithstanding.

The judgment should be reversed, and a new trial had before another referee, in conformity to our practice in this district; costs to abide the event.

New trial granted.

[Oswego General Term, July 8, 1862. *Mullin, Morgan* and *Bacon,* Justices.